Argued and submitted March 13, 2014, reversed and remanded July 22, 2015

BOARDMASTER CORPORATION,
an Oregon corporation,
*Plaintiff-Appellant,*
*and*

Garry G. OLSON
and Larry L. Olson,
*Plaintiffs,*

*v.*

Foster A. GLASS,
*Defendant-Respondent.*

Jackson County Circuit Court
095639L3; A153273

356 P3d 1126

James E. Leuenberger argued the cause for appellant. With him on the briefs was James E. Leuenberger PC.

Nathan G. Steele argued the cause and filed the briefs for respondent.

Before Duncan, Presiding Judge, and Ortega, Judge, and Lagesen, Judge.*

ORTEGA, J.

---

* Ortega, J., *vice* Wollheim, S. J.

## ORTEGA, J.

In this attorney malpractice action, plaintiff challenges the trial court's grant of defendant's motion for summary judgment. The underlying dispute concerns a tort claim that arose when Jackson County, asserting authority under ORS 479.820, ordered Pacific Power to disconnect electrical power to plaintiff's lumber mill. After plaintiff's electrical service was disconnected, plaintiff consulted an attorney, defendant, who advised that, for statute of limitations purposes, the disconnection order constituted a tort that continued for as long as that order remained in effect. Plaintiff, represented by another attorney, later sued Jackson County, among other defendants. Jackson County successfully moved to dismiss the case on the basis that the suit was untimely. Plaintiff appealed, and we affirmed, concluding that Jackson County's order to Pacific Power constituted a "discrete, harm-producing act," not a continuing tort, and that, because plaintiff's suit was filed two years after that act, it was time-barred under ORS 30.275(9). *BoardMaster Corp. v. Jackson County*, 224 Or App 533, 552, 198 P3d 454 (2008).

In this case, plaintiff sued defendant, alleging that, had defendant not erroneously advised plaintiff that the tort was continuing, plaintiff would have filed its action sooner and would have prevailed in its suit against Jackson County and that, accordingly, defendant's advice constituted legal malpractice. Defendant moved for summary judgment, arguing that plaintiff could not prove that it actually sustained damages as a result of defendant's alleged negligence because Jackson County had the legal right to disconnect defendant's electrical service. Plaintiff contends that Jackson County's order to disconnect electrical service was not authorized by ORS 479.820, which, according to plaintiff, only authorized Jackson County to order electrical disconnection if it determined, after an inspection (which did not occur here) that an electrical installation or product was unsafe. The trial court sided with defendant, granting the summary judgment motion on the basis that plaintiff's reading of ORS 479.820(2) was incorrect and that plaintiff would not have prevailed in its

action,[1] and plaintiff appeals. Defendant cross-assigns error to the trial court's denial of a separate motion for summary judgment, which contended that plaintiff's legal malpractice action was untimely. We reject that cross-assignment without further written discussion. For the following reasons, we conclude that the trial court's interpretation of ORS 479.820(2)—that the statute allows electrical disconnection because of a failure to obtain a permit—was incorrect and, thus, its determination that plaintiff could not prevail on its "case within a case" as a matter of law was in error. Accordingly, we reverse the court's grant of summary judgment.

We review a trial court's grant of summary judgment under ORCP 47 C to determine whether the trial court correctly concluded that there is "no genuine issue of material fact and the moving party is entitled to prevail as a matter of law." *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001). We view the evidence in the light most favorable to the nonmoving party—here, plaintiff—and draw all reasonable inferences in that party's favor. *Id.* (citing *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997)).

We begin with the facts of plaintiff's underlying case. Plaintiff purchased 44 acres and a lumber mill from Casey Investments, Inc. ("Casey"), a corporation wholly owned by Jones. Casey retained five acres of property, on which Jones had put a mobile home. Jones had connected power to the mobile home from the lumber mill without obtaining a permit. Jackson County discovered the electrical installation and cited Jones in 2000 for failure to obtain a permit in violation of the Jackson County Code (JCC), for which Jones was later convicted and ordered to pay a $600 fine and obtain a permit within 60 days. Jones did not then obtain the necessary electrical installation permit or pay the fine. Jackson County did not consider the property partitioned and regarded Jones as the owner of the lumber mill. So, in 2003, when Jackson County ordered Pacific Power,

---

[1] ORS 479.820(2) provides that, "[i]f the department finds that the electrical installation or product fails to comply with minimum safety standards or electrical product safety standards, the department may disconnect or order the disconnection of service thereto."

plaintiff's electrical power service provider, to disconnect electrical service to Jones via the following letter, the disconnection order affected plaintiff's lumber mill:

> "'With regard to [747 West Fork Trail Cr. Rd], *** Jones has been issued a direction to obtain the required building and electrical permits for an addition to the house at this address. *** Jones has, evidently, chosen not to adhere to the requirements of the Oregon Revised Statutes.'

> "'With reference to ORS 479.550, 479.820, and 479.830,[2] Jackson County has no alternative but to order Pacific Corp. to disconnect the Electrical Service to 747 West Fork Trail Cr. Rd. *** Jones has not obtained the proper permits in order to have this property inspected for Fire and Life Safety minimum standards, therefore, it must be considered to have failed those standards at this time (ORS 479.820(a)(2)).'

> "'This is, by definition, a 'flagrant' violation of law, and is subject to further action by the County or State.'

> "'Please disconnect [electrical] service to this site.'"

*BoardMaster*, 224 Or App at 536. Ultimately, Pacific Power disconnected electrical service to plaintiff's lumber mill, and, as noted, plaintiff unsuccessfully sued Jackson County.

Here, in plaintiff's subsequent malpractice action, defendant moved for summary judgment on the ground that plaintiff could not prevail on its attorney malpractice claim because plaintiff would not have won its underlying tort action against Jackson County even if defendant had correctly advised plaintiff that it must file earlier in order to bring its case within the statute of limitations. The trial court granted summary judgment to defendant, determining that

> "[i]t is clear the statute does not express the specific 'safety standards' that the person must run afoul of to entitle the County to use its remedy. ***

> "So what issues can be involved as 'safety standards' and did Mr. Jones and/or plaintiff fail to comply with those requirements?

---

[2] The legislature repealed ORS 479.830 in 2001, before the disconnection order. Oregon Laws 2001, ch 411, § 31.

"\* \* \* \* \*

"It is patently obvious that the requirement of the application for and the granting of permits for building projects by persons, is intended for the safety of the persons and all others. It allows for the process of preview of construction with denial/approval, actual construction and inspection of actual construction to determine compliance with the original approval and all standards of construction. It does not take a dictionary or testimony to know or find that electric current is clearly an important factor in construction and one that can lead to drastic consequences if not responsibly installed and regulated.

"The application for a permit and permit process is the very basic first step in all construction projects and in compliance with building and safety codes/standards in order to provide for safe homes, buildings and the like. It provides basic information from advising the regulatory authority that a project is being engaged to the inspection of the premises, plans and the like.

"I find as a matter of law that a failure to apply for a building permit is a violation or failure to comply with minimum safety standards that apply to an electrical installation under ORS 479.820.

"While I feel that this conclusion can be reached without considering the public policy behind the statute and the intent behind the legislature with this section, it is equally obvious that public policy and the legislature in order to enforce the safe use of electricity in the State of Oregon would also consider the permit process and the requirement of a permit a critical part of the framework that would allow for the enforcement of the safety process as provided for in ORS 479.820."

The court's ruling and the parties' arguments present a question of statutory interpretation, requiring us to look to the text, context, and legislative history of ORS 479.820 to determine legislative intent for the meaning of "minimum safety standards" and when electrical service disconnection is allowable. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). That is, ORS 479.820 provides for electrical service disconnection if an electrical installation "fails to comply with minimum safety standards"; the parties dispute whether a failure to comply with the

permitting process constitutes a failure to comply with minimum safety standards as a matter of law.

ORS 479.820 is part of the Electrical Safety Law, ORS 479.510 to 479.945 and ORS 479.995. ORS 479.510. The Electrical Safety Law's purpose is to "protect the health and safety of the people of Oregon from the danger of electrically caused shocks, fires and explosions and to protect property situated in Oregon from the hazard of electrically caused fires and explosions." ORS 479.520. That purpose is accomplished, in relevant part, by providing a procedure "to assure that electrical installations meet minimum safety standards and that electrical products meet minimum safety standards." ORS 479.520(3). Part of that procedure is set out in ORS 479.820, which, in part, provides:

"(1) The Department of Consumer and Business Services[3] shall:

"* * * * *

"(b) Inspect electrical installations and products for which a permit or license is required by ORS 479.510 to 479.945.

"(c) Inspect permits attached to electrical installations or products for which a permit is required by ORS 479.510 to 479.945.

"(2) If the department finds that the electrical installation or product fails to comply with minimum safety standards or electrical product safety standards, the department may disconnect or order the disconnection of service thereto.

"(3) If the department finds that the condition of an electrical installation or product constitutes an immediate hazard to life or property, the department may cut or disconnect any wire necessary to remove such hazard or take corrective action as provided by rules adopted under ORS 479.730.

"* * * * *

---

[3] ORS 479.855 allows the Department of Consumer and Business Services to delegate to a city or county the administration and enforcement of "ORS 479.510 to 479.945 and 479.995" if the city or county meets certain conditions.

"(5) For the purpose of discharging any duty imposed by ORS 479.510 to 479.945 and 479.995 or exercising authority conferred hereby the department may enter, during reasonable hours, any building, enclosure, or upon any premises where electrical work is in progress, where an electrical installation has been made or where electrical equipment or products may be located.

"(6) A person may not obstruct or interfere with the department in performance of any of the department's duties or the exercise of any authority conferred under this section."

Here, the relevant provision is ORS 479.820(2), which allows for service disconnection if "the department finds that the electrical installation * * * fails to comply with *minimum safety standards.*" (Emphasis added.) "[M]inimum safety standards" are defined in the Electrical Safety Law as "safety standards prescribed by the department under ORS 479.730." ORS 479.530(16) (2001), *amended by* Or Laws 2003, ch 299, § 2. ORS 479.730 sets out subjects of the Electrical Safety Law that are to be addressed in administrative rules to be adopted by the Department of Consumer and Business Services (the department), with the approval of the Electrical and Elevator Board. ORS 479.730(1), in particular, provides for the adoption of administrative rules "[e]stablishing, altering or revoking *minimum safety standards for workmanship and materials* in various classifications of electrical installations." (Emphasis added.) Consequently, the department adopted the "Electrical Specialty Code," which means "the National Electrical Code with Oregon amendments." OAR 918-251-0090(12).[4] The National Electrical Code provides standards for electrical installations and states as its purpose "the practical

---

[4] Added context for the meaning of "minimum safety standards" and the Oregon Electrical Specialty Code and the National Electrical Code can be found in OAR 918-305-0000 (authorized by and implementing ORS 479.730), which provides:

"Wiring installation in existing buildings in the State of Oregon that complied with the minimum electrical safety code standards, **National Electrical Code** or **Oregon Electrical Specialty Code** in effect at the time of installation shall not be considered in violation of the current minimum **Electrical Specialty Code** standards, unless the use or occupancy of the building is changed requiring different methods, alterations, or additions."

(Boldface in original.)

safeguarding of persons and property from hazards arising from the use of electricity." Oregon Electrical Specialty Code 2002, Articles 90.1 and 90.2. In sum, ORS 479.820, ORS 479.530(16) (2001), and ORS 479.730(1) together provide for the adoption of "minimum safety standards" for electrical installations, which in OAR 918-251-0090(12), are identified as the Electrical Specialty Code.

Thus, plaintiff has a point when it argues that the trial court erred when it observed that ORS 479.820 "does not express the specific 'safety standards' that the person must run afoul of to entitle the County to use its remedy." Although ORS 479.820 does not itself specify what "minimum safety standards" means, the Electrical Safety Law and its administrative rules, in fact, do.

Moreover, the statutory provisions and the administrative rules applicable here do not implicate the permitting process, the violation of which led to Jackson County's action at issue in plaintiff's underlying claim. ORS 479.730 does not include the permitting process among the subjects regarding which the department's director must implement rules.[5] ORS 479.730(1) provides that the rules prescribed for "minimum safety standards" are to be for *"workmanship and materials"* in various classifications of electrical installations. (Emphasis added.) Workmanship and materials plainly do not include a "permit," which is defined as an "official document or card issued by the enforcing agency to authorize performance of a specified electrical installation." ORS 479.530(19) (2001). Further, absent in the rules' definitional section implementing ORS 479.730 are definitions concerning the permitting process or enforcement. OAR 918-251-0090. And the Electrical Specialty Code does not have provisions for permitting or enforcement. Oregon Electrical Specialty Code 2002.[6]

---

[5] ORS 479.730(4) provides for "[p]rescribing times, places and circumstances that permits shall be exhibited for inspection." That narrow prescription, however, concerns the display of permits and not the process for obtaining permits or their enforcement.

[6] Included (and since removed to the appendix) in the Electrical Specialty Code was Article 80, which sets out model provisions concerning permits and enforcement. Article 80 is "informative" and does "not apply unless specifically adopted by the local jurisdiction adopting the National Electrical Code." Oregon Electrical Specialty Code 2002, Article 80.5.

Other subsections of ORS 479.820 are instructive. The statute begins, in subsection (1), by providing the authority for the inspection of electrical installations and permits by the department (or, under ORS 479.855, its delegates). Section (1)(b), however, defines the scope of the matters subject to inspection under the Electrical Safety Law as "electrical installations and products for which a permit * * * is *required*" (emphasis added) and does not condition the department's authority to inspect on an owner or building occupant having *obtained* a permit. Subsections (5) and (6) provide that the department "may enter, during reasonable business hours, any building, enclosure, or upon any premises * * * where an electrical installation has been made" and that "a person may not obstruct or interfere with the department in performance of any of the department's duties." Again, ORS 479.820 does not make reference to the permitting process in authorizing the department to enter a building without impediment. Subsection (3) provides for the specific remedy of disconnecting or cutting a wire if the department finds "an immediate hazard to life or property." Such a remedy corresponds to danger, *i.e.*, an electrical installation discovered as dangerous can be rendered safe by cutting or disconnecting the wire conveying the electricity. Likewise, under subsection (2), an electrical installation that does not meet "minimum safety standards" can be rendered safe by disconnecting the electrical service to the installation.

Thus, ORS 479.820 allows the department or its delegate—here, Jackson County—to inspect and determine that an electrical installation does not comply with minimum safety standards—that is, is in violation of the Electrical Specialty Code—without a building owner or occupant having obtained a permit, and to make the unsafe electrical installation safe by ordering the disconnection of electrical service. That enforcement power is consistent with the Electrical Safety Law's purpose of protecting Oregonians and Oregon property from electrically caused shocks, fires, and explosions. However, the statute does not equate the lack of a permit with a violation of minimum safety standards.

Defendant does not address plaintiff's argument that "minimum safety standards" is a defined term that

ultimately finds specificity in OAR 918-251-0090—that is, the Electrical Specialty Code—and instead argues that the permitting process is necessarily implicated in what constitutes "minimum safety standards." That is, according to defendant, "when a property owner obtains an electrical permit and follows the permit process, including an inspection by an Electrical Specialty Code Inspector who certifies that the installation meets the minimum requirements of the Electrical Specialty Code, the electrical installation will meet minimum safety standards." Defendant's argument thus has two parts. *First*, Jackson County was "legally entitled" under the Electrical Safety Law and the JCC to require a permit before Jones connected power to his mobile home in order to ensure that the installation was safe, and, because Jones's installation of electrical wires to his mobile home violated the Electrical Safety Law, the installation failed to meet minimum safety standards. *Second*, concluding that obtaining a permit is not required in order to meet "minimum safety standards" renders meaningless ORS 479.550(1)—the provision of the Electrical Safety Law that requires a permit before someone may work on any new electrical installation. However, defendant's argument is unavailing.

We begin with defendant's contention that Jackson County had legal authority over the permitting process to ensure compliance with its ordinances and the Electrical Safety Law and that the failure to abide by the county's permit process meant that the electrical installation did not meet minimum safety standards. Among many other provisions in the Electrical Safety Law, defendant cites ORS 479.550(1), which provides that, unless an exemption exists, "no person shall work on any new electrical installation for which a permit has not been issued." Furthermore, defendant points to Jackson County's ordinances, JCC 1046.01 and JCC 1420.04, which provide, respectively:

> "No person shall connect electrical service to any construction site or to any structure or mobile home erected, installed or altered within the County for which a building permit or mobile home installation permit has not been obtained."

And:

> "No person shall inhabit or occupy, or permit the inhabitation or occupancy of, any premises, including dwellings, other buildings or land, unless all permits required for such premises under any prevailing law have been obtained and are in force. No person shall violate or fail to comply with any of the provisions of the * * * Electrical Specialty Code[.]"

Defendant observes that only a licensed electrician can perform (nonexempt) electrical installations and an Electrical Specialty Code Inspector makes an inspection under the permitting process. ORS 479.620; ORS 479.820(1)(b); OAR 918-271-0000 - 918-271-0030. Defendant posits that, with those provisions considered together, "if a property owner installs electrical wires without following the permit process, the electrical installation violates [the Electrical Safety Law], and thus, fails to meet minimum safety standards."

Defendant's reasoning is flawed. Although it is true that an electrical installation without a permit violates the Electrical Safety Law, it does not necessarily follow that an electrical installation in violation of the Electrical Safety Law "fails to comply with minimum safety standards": The Electrical Safety Law is not equivalent to "minimum safety standards" or, more precisely, the Electrical Specialty Code. While we agree with the trial court that application for a permit and the permit process itself is "the very basic first step in all construction projects and in compliance with building and safety codes/standards in order to provide for safe homes [and] buildings," those observations do not answer the question whether ORS 479.820 allows the remedy of service disconnection for failure to obtain a permit or whether the failure to obtain a permit constitutes a failure to meet minimum safety standards. Although the permit process is designed to ensure compliance with minimum safety standards, failure to obtain a permit does not answer one way or the other whether an electrical installation meets those standards.

Under ORS 479.820(5) and ORS 479.820(6), the department or its delegate (here, Jackson County) is allowed to inspect, without obstruction, an electrical installation, even if a permit has not been issued. Thus, although a

permit is an integral part of the Electrical Safety Law, *see* ORS 479.550, and alerts an inspecting jurisdiction that an inspection is called for in order to enforce minimum safety standards under ORS 479.820, a permit is not a necessary condition for an inspection to take place in order to ascertain if the electrical installation violates a standard under the Electrical Specialty Code.

Moreover, so concluding does not "gut" ORS 479.550(1). Both the Electrical Safety Law and the JCC provide for civil penalties. ORS 479.995 provides for civil penalties for violations of the Electrical Safety Law, including the failure to obtain a permit before proceeding with an electrical installation.[7] Jackson County likewise provides for civil penalties for violations of its ordinances. JCC 1046.99; JCC 202.99. Indeed, Jones was cited for failing to obtain the necessary permits and was fined $600.

In sum, Jackson County relied on ORS 479.820 for the authority to disconnect plaintiff's electrical service because, in its view, a failure to obtain a permit meant a failure to comply with "minimum safety standards." "Minimum safety standards," however, means the Electrical Specialty Code. A failure to obtain a permit is not a violation of the Electrical Specialty Code and, thus, ORS 479.820 did not provide Jackson County with the authority to disconnect plaintiff's electrical service. Consequently, the trial court erred in granting summary judgment to defendant on the basis that ORS 479.820[8] authorized the county's action and

---

[7] ORS 479.995 provides:

"The Electrical and Elevator Board may impose a civil penalty for a violation of ORS 479.510 to 479.945 or rules adopted for the administration or enforcement of ORS 479.510 to 479.945 and this section. The board shall impose a civil penalty authorized by this section as provided in ORS 455.895."

ORS 455.895 provides that "[c]ivil penalties under this section shall be imposed as provided in ORS 183.745," which sets out requirements for service of notice of the civil penalty, the opportunity to request and have a hearing to contest the civil penalty, and judicial review of an order made after a hearing.

[8] We emphasize that we are addressing only the legal predicate for the trial court's grant of summary judgment—that ORS 479.820 authorized the county's disconnection order. As we have concluded, that statute did not authorize the county's action. Defendant has not identified—either in the trial court or before us—any other source of legal authority for the disconnection order. We accordingly express no opinion as to whether there might be some other source of authority for the county's action.

thereby foreclosed, as a matter of law, the possibility that plaintiff could prevail in his action against defendant. We therefore reverse the trial court's grant of the motion for summary judgment.

Reversed and remanded.